RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

K. H., a minor child,

                                        *Petitioner*,

                                                            No. 18-3426

*v.*

WILLIAM P. BARR, Attorney General,

                                        *Respondent*.

─────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 206 685 772.

Argued:  January 16, 2019

Decided and Filed:  April 8, 2019

Before:  COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Edward W. Farrell, RUSSELL IMMIGRATION LAW FIRM PLLC, Louisville, Kentucky, for Petitioner.  Susan Bennett Green, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Edward W. Farrell, RUSSELL IMMIGRATION LAW FIRM PLLC, Louisville, Kentucky, for Petitioner.  Susan Bennett Green, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

## OPINION

─────────────

COLE, Chief Judge.  K.H., a Guatemalan native and citizen, was kidnapped, beaten, and raped in Guatemala when she was seven years old.  Upon notice of the kidnapping, the Guatemalan police quickly intervened and caught K.H.'s persecutors, who were then tried, convicted, and sentenced.  Shortly thereafter, K.H. fled to the United States.  K.H. now appeals

the order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ")
denial of her applications for asylum and humanitarian asylum because she failed to demonstrate
past persecution.  Specifically, in affirming the IJ's order, the BIA concluded that K.H. failed to
show that the Guatemalan government was unwilling or unable to control her persecutors and
protect her, considering the Guatemalan police's effective response to her kidnapping.

We conclude that substantial evidence supports the BIA's determination that K.H. failed
to show that the Guatemalan government was unwilling or unable to control her persecutors and
protect her.  We therefore deny K.H.'s petition for review.

## I.  BACKGROUND

### A.  Factual Background

In 2012, while waiting at a bus stop in Barbarena, Santa Rosa, Guatemala, seven-year-old
K.H. was kidnapped by members of a gang known as "Los Cobardes."  The kidnappers sought
ransom from both K.H.'s grandmother, Milagro—a woman of indigenous Xinca heritage—and
K.H.'s mother, who was living in the United States.  While communicating with Milagro, the
kidnappers used various slurs to demean indigenous people.[1]  In response, Milagro contacted the
Guatemalan National Police ("GNP"), who began to track the ransom calls.

During her detention, K.H.'s kidnappers beat and raped her.  When her captors realized
they were being tracked by the GNP, they abandoned K.H. in a field.  The GNP then located
K.H., who was hospitalized for approximately two weeks due to her injuries.

After her hospital stay, the Guatemalan Trial Court for Childhood and Adolescent Cases
(the "Trial Court") ordered K.H. to be placed in a temporary shelter.  Consequently, K.H. was
sent to Refugio de la Ninez, a refuge for children in Guatemala City.  The Trial Court also
ordered that the refuge "provide intensive psychological therapy" to K.H. and directed the
Attorney General to "facilitate the steps necessary in order for the child to be transferred to the
United States."  (A.R. 311.)

---

[1]Evidence in the record notes that the Xinca (Mesoamerican Indians of Southeastern Guatemala) have
experienced harsh treatment—including branding and enslavement—since the early 16th century.

At a follow-up hearing in 2014, the Trial Court directed that K.H. be released from the refuge, to the care of Milagro, on the condition that they live elsewhere in Guatemala. The Trial Court also ordered that K.H. and Milagro "be strictly supervised" by the Fraijanes Police Department, as Fraijanes was the city in which they planned to live. (A.R. 299.) Finally, the Court again directed the refuge to help K.H. "obtain her American Visa and to transfer her to a more secure location." (A.R. 300.) K.H. and Milagro lived in Fraijanes for a few months but eventually returned to Barbarena for economic reasons.

At least four of the perpetrators of K.H.'s kidnapping were caught, tried, and convicted, and received sentences ranging from 27 to 72 years' imprisonment. Two additional individuals were identified as connected to the gang and potentially the kidnapping, but the record is unclear as to whether they were apprehended.

While K.H.'s application for an American visa was pending, she fled to the United States.

**B. Procedural Background**

Upon reaching the United States-Mexico border in March 2014, K.H. was apprehended by immigration authorities, taken into custody, and placed in removal proceedings. K.H. filed her application for asylum in December 2014, alleging fear of harm in her home country on account of her race, ethnicity, and membership in a particular social group comprised of members of her family who cooperated with the police and prosecutors to convict gang members.

Prior to her removal proceedings, the parties stipulated that (1) the harm K.H. experienced rose to the level of persecution and (2) K.H. was persecuted on account of her race and her membership in a particular social group. Thus, the only remaining issue was whether the Guatemalan government was unable or unwilling to control K.H.'s persecutors and protect her. As a result, K.H. did not testify.

At the hearing, the IJ heard evidence about the kidnapping, the Guatemalan government's response, and general country conditions in Guatemala. Milagro testified through an interpreter, but the IJ ultimately found that she was not credible.

On June 9, 2017, the IJ denied K.H.'s applications for asylum and humanitarian asylum under 8 C.F.R. § 208.13(b)(1)(iii), withholding of removal pursuant to § 241(b)(3) of the Immigration and Nationality Act ("INA"), and relief under Article III of the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c). The IJ accepted the parties' stipulations that the harm K.H. experienced rose to the level of persecution and that this persecution was on account of her race and membership in a particular social group. But the IJ found that the Guatemalan government "was doing everything in its power to control [K.H.]'s persecutors," including tracking, identifying, and convicting a number of K.H.'s kidnappers. (IJ Decision, A.R. 66–67.) The IJ also found that the Guatemalan government offered protection to K.H. following her kidnapping by placing her in a shelter, offering psychological care, and ordering her to relocate to another city.

In light of this evidence, the IJ found that K.H. had not met her burden to prove that the Guatemalan government was unwilling or unable to control her persecutors and protect her, and thus she did not meet the standard to show past persecution. Because the IJ held that K.H. could not demonstrate past persecution, he also found that she was not eligible for a grant of humanitarian asylum. Finally, the IJ found that K.H. had failed to establish the well-founded fear requirement, and thus her withholding of removal and CAT claims failed.

K.H. appealed to the BIA, challenging only the denial of her asylum and humanitarian asylum applications. The BIA denied K.H.'s appeal, holding that "the specific steps taken by the authorities in the respondent's case reflect the government's ability and willingness to protect her by prosecuting her assailants and providing protection to the respondent from the perpetrators." (BIA Decision, A.R. 5.) Specifically, the BIA stated that K.H.'s "own experience with the police, prosecutors, and the judiciary demonstrates a significant governmental willingness and ability to protect her." (*Id.*) In light of this holding—that K.H. did not establish past persecution—the BIA found that K.H. was not eligible for a grant of humanitarian asylum.

K.H. now seeks review in this court, arguing that the BIA erred in holding that she failed to demonstrate that the Guatemalan government was unwilling or unable to control her persecutors and protect her, and erred in failing to grant her humanitarian asylum.

## II.  DISCUSSION

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)).  "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)).  The IJ and the BIA's factual findings are reviewed under the substantial-evidence standard.  *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007).  We cannot reverse such findings simply because we would have decided them differently.  *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005).  These findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)).

**A.  Asylum**

The Attorney General has discretionary authority to grant asylum to an individual who qualifies as a "refugee" within the meaning of § 101(a)(42)(A) of the INA.  *Ouda v. I.N.S.*, 324 F.3d 445, 451 (6th Cir. 2003).  "A refugee is defined as a person who is unable or unwilling to return to [her] home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"  *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)).  An asylum applicant bears the burden of demonstrating that she qualifies as a refugee by establishing "either that [s]he has suffered actual past persecution or that [s]he has a well-founded fear of future persecution." *Id.* (citing *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998); 8 C.F.R. § 208.13(b) (2004)).  "Persecution is 'the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim.'" *Kamar v. Sessions*, 875 F.3d 811, 818 (6th Cir. 2017) (quoting *Khalili*, 557 F.3d at 436).

Here, K.H.'s persecution claim is based on past persecution by non-governmental actors. Because the government stipulated that K.H.'s kidnapping rose to the level of persecution and was on account of a statutorily proscribed ground, K.H. need only "show that the Guatemalan government was unwilling or unable to control [her persecutors] and protect her" to demonstrate past persecution. *Velasquez-Rodriguez v. Whitaker*, No. 18-3630, 2019 WL 364446, at *3 (6th Cir. Jan. 29, 2019) (citing *Khalili*, 557 F.3d at 436); *see also Borodachev v. Holder*, 441 F. App'x 354, 360 (6th Cir. 2011) (citing *Fisenko v. Holder*, 336 F. App'x 504, 509 (6th Cir. 2009) ("Where the government is not responsible for the persecution, the alien must demonstrate that the government is unwilling or unable to control those who are responsible."). K.H. has the burden to show that the Guatemalan government was unwilling or unable to control her persecutors and protect her. *See, e.g.*, *Pilica*, 388 F.3d at 950.

In evaluating past persecution—and in this case, the "unwilling or unable to control" element—an adjudicator must examine "the overall context of the applicant's situation[,]" *Haider v. Holder*, 595 F.3d 276, 287 (6th Cir. 2010) (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005)), and review "all relevant evidence in the record[.]" *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069 (9th Cir. 2017) (citation omitted). In other words, courts "must view the evidence in the aggregate," with no one factor being dispositive. *See Haider*, 595 F.3d at 287. The IJ correctly noted, however, that the law in this circuit does not provide a clear roadmap for the "unwilling or unable" analysis:

> The Court is not aware of any Board or Sixth Circuit precedent that describes the level of activity needed to show that a government is unable or unwilling to control a respondent's persecutors, however the First Circuit Court of Appeals has spoken to this issue. The First Circuit has held that when a government makes every effort to combat violence by private actors, and its inability to stop the problem is not distinguishable from any other government's struggles, the private violence has no government nexus, and does not constitute persecution. *Burbiene v. Holder*, 568 F.3d 251 (1st Cir. 2009). In another case, the First Circuit noted that it was "particularly unwilling to overturn a finding of no government connection where the local authorities have appropriately responded to incidents of violence." *Khan v. Holder*, 727 F.3d 1, 7 (1st Cir. [2013]) (citing *Ortiz-Araniba v. Keisler*, 505 F.3d 39, 42 (1st Cir. 2007)). In a third case, the First Circuit found that the Brazilian government was not unable or unwilling to control the respondents' persecutors because the arrest of a gang leader showed

their willingness to combat the gang's tendencies.   *Dias Gomes v. Holder*, 566 F.3d 232, 233 (1st Cir. 2009).

(IJ Decision, A.R. 67–68.)  The IJ adopted the First Circuit's approach and held that because "it appears that the Guatemalan government did everything in its power to rescue [K.H.], arrest her kidnappers, and convict her kidnappers," K.H. did not demonstrate the government was unwilling or unable to control her persecutors.  (*Id.* at 68.)

We, however, reject the First Circuit's one-dimensional approach.  In keeping with our precedent, we note that we "must evaluate past persecution based on 'the overall context of the applicant's situation[.]'"   *See Haider*, 595 F.3d at 287 (quoting *Gilaj*, 408 F.3d at 285). Consequently, a government's specific response to a petitioner's persecution cannot be the only relevant evidence an immigration judge considers.  Instead, we look to two general categories of information:  (1) the government's response to an asylum applicant's persecution and (2) general evidence of country conditions.  *See, e.g.*, *Perez-Aguilon v. Lynch*, 674 F. App'x 457, 463 (6th Cir. 2016) (relying on the police response, as well as the country-condition reports in determining whether the Guatemalan government was unwilling or unable to control petitioner's persecutors); *Gomez-Romero v. Holder*, 475 F. App'x 621, 625 (6th Cir. 2012) (same).  Both categories will be discussed in turn.

### 1. The Government's Response

In considering a government's response, courts should review a variety of factors, including, but not limited to:  (1) whether the police investigated, prosecuted, and punished the persecutors, *see, e.g.*, *Berishaj v. Gonzales*, 238 F. App'x 57, 63–64 (6th Cir. 2007) (relying on the fact that the persecutor was convicted and punished to hold that the government was not unwilling or unable to protect the asylum applicant); *Fisenko*, 336 F. App'x at 509 (holding that the incidents in question "were investigated by the police and the police took that investigation seriously, such that it could not be said that the government was unable or unwilling to control the [persecutors]"); (2) the degree of protection offered to an asylum applicant following the persecution, *see Khalili*, 557 F.3d at 436 (relying on the fact that "police have placed potential victims in protective custody" to hold that the Jordanian government was not unwilling or unable to protect petitioner); and (3) any concessions on the part of the government, *see Garcia v.*

*Attorney General of the United States*, 665 F.3d 496, 503 (3d Cir. 2012) (holding that "[t]he fact that Guatemala saw fit to relocate [the petitioner] to Mexico is tantamount to an admission that it could not protect her in Guatemala.").

In this case, the BIA agreed with the IJ "that the specific steps taken by the authorities in [K.H.'s] case reflect the government's ability and willingness to protect her by prosecuting her assailants and providing protection to the respondent from the perpetrators." (BIA Decision, A.R. 5.) Specifically, the BIA referenced the IJ's reliance on the fact that K.H. "was placed in a government supported child refuge, instructed to relocate to a new city by the judge presiding over the criminal matter, and scheduled for regular check-ins with authorities as a means of protection after she was rescued by the police." (*Id.* at 4–5.) Finally, the BIA briefly noted that the Trial Court recommended that K.H. "seek a visa allowing her to join her family in the United States." (*Id.* at 4.)

As an initial matter, although K.H. was placed in a refuge and scheduled for regular check-ins with authorities, there is no indication any such visits occurred. Accordingly, it is not clear from the record what protection, if any, K.H. was provided after she left the refuge. Moreover, the record indicates that K.H. was directed to apply for a humanitarian visa to be with her mother, as well as for *safety* reasons. These factors, thus, do not support the BIA's conclusion. To the contrary, these factors actually support K.H.'s argument.

But the BIA *did* adequately consider the other factors that weigh strongly in the government's favor: for example, the police's timely and effective investigation, the efficient prosecution of K.H.'s perpetrators, and the lengthy punishments imposed. Thus, although the evidence is not as strong as the BIA indicated, the BIA reasonably concluded that some of the evidence presented, with respect to the government's response, demonstrated the Guatemalan government was not unwilling or unable to control K.H.'s persecutors and protect her.

### 2. *Country Conditions*

We also consider country conditions in the "unwilling or unable" analysis, as it allows an adjudicator to consider a country's practices more generally and gives a broader picture of the social, economic, and cultural realities of a country. *See Kamar v. Sessions*, 875 F.3d 811, 819

(6th Cir. 2017). Indeed, this type of evidence is consistently used in a variety of asylum matters, including withholding of removal, past persecution, and future persecution analyses, as it informs an adjudicator (1) how certain crimes are prosecuted and punished, *see id.* (holding the Jordanian government was unable to protect asylum applicant when country reports established that Jordanian governors routinely abused the law and imprisoned potential victims of honor crimes in a poor attempt to protect victims); *Khalili*, 557 F.3d at 436 (relying on the State Department's 2005 Country Report on Human Rights Practices for Jordan to determine how honor crimes were prosecuted and handled on a country-wide basis), as well as (2) the efficacy of the government's efforts, *see El Ghorbi v. Mukasey*, 281 F. App'x 514, 517 (6th Cir. 2008) (relying on the State Department's 2004 Country Report on Human Rights Practices for Mauritania to obtain statistics on domestic violence disputes); *Madrigal v. Holder*, 716 F.3d 499, 507 (9th Cir. 2013) ("Some of the successes cited in the BIA's opinion—such as the arrests during a seven-year period of '79,000 people on drug trafficking related charges'—may be of limited practical significance to [asylum applicant]'s situation, because corruption is also rampant among prison guards, and prisoners can and do break out of prison with the guards' help.").

Here, the IJ erred in failing to consider the relevant country condition evidence in analyzing past persecution, which would warrant reversal standing alone. But the BIA's separate opinion acknowledged this evidence, and that is the final agency determination we review. *See Khalili*, 557 F.3d at 435. In its opinion, the BIA "recognize[d] [K.H.'s] assertions that (1) the Guatemalan government often provides inadequate protections to indigenous women and girls and (2) there are high levels of crime in the country that are generally hard to control." (BIA Decision, A.R. 5.) A review of the record certainly illustrates K.H.'s concerns. But the BIA held that "notwithstanding various identified systemic problems, suggesting that the Guatemalan government does not have the resources to stop all violence against indigenous women and girls, the respondent's own experience with the police, prosecutors, and the judiciary demonstrates a significant governmental willingness and ability to protect her." (*Id.*)

Again, we reiterate that the government's response to K.H.'s kidnapping is not dispositive. But we cannot say that the BIA's decision here was not supported by substantial

evidence given just how much effort the Guatemalan government expended in trying to control K.H.'s persecutors and protect her.  While we may have reached a different result—and found that the government's response did not outweigh the record evidence demonstrating the struggles of the Guatemalan government to protect minors and indigenous citizens—that is not the standard.  *See Gishta*, 404 F.3d at 978.  Instead, we can reverse the BIA's factual findings only when "any reasonable adjudicator would be compelled to conclude to the contrary."  *Slyusar*, 740 F.3d at 1072.  In light of the timely intervention and arrest by the GNP, followed by the prosecution, conviction, and sentencing of K.H.'s persecutors, as well as the steps taken by the Trial Court in an effort to protect K.H., we affirm the BIA's finding that K.H. failed to meet her burden in showing the Guatemalan government was unwilling or unable to control her persecutors and protect her.

## B.  Humanitarian Asylum

The BIA held that in the absence of past persecution, K.H. was not eligible for a grant of humanitarian asylum.  "We review the BIA's denial of humanitarian asylum for an abuse of discretion."  *Mbodj v. Holder*, 394 F. App'x 239, 245 (6th Cir. 2010) (citing *Karomi v. Gonzales*, 168 F. App'x 719, 723 (6th Cir. 2006); *Hadad v. Ashcroft*, 127 F. App'x 800, 802 (6th Cir. 2005)).  In determining whether the BIA abused its discretion, "this court must decide whether the [BIA']s decision was made without a rational explanation, inexplicably departed from established policies or rested on an impermissible basis, such as invidious discrimination[.]"  *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004) (quoting *Hazime v. INS*, 17 F.3d 136, 140 (6th Cir. 1994)).

Humanitarian asylum may be granted if (1) the applicant has demonstrated "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," or (2) there is a reasonable possibility an applicant "'may suffer other serious harm upon removal to that country,' even in the absence of a well-founded fear of future persecution."  *Mbodj*, 394 F. App'x at 244 (quoting 8 C.F.R. § 1208.13(b)(1)(iii)).  Humanitarian asylum is a form of "extraordinary relief" that is appropriate only "in rare instances" where the applicant has "suffered under atrocious forms of persecution."  *Id.* at 244–45 (quoting *Cutaj v. Gonzales*, 206 F. App'x 485, 492 (6th Cir. 2006); *Hamida*, 478 F.3d at 740).

K.H. argues that, even if the BIA did not err in determining that she suffered past persecution, it erred in denying her humanitarian asylum because she will suffer "other serious harm" if removed to Guatemala.  But K.H. fails to acknowledge that if she did not suffer past persecution, she cannot receive humanitarian asylum.  *Hamida*, 478 F.3d at 741 (holding that "the other serious harm provision provides a second avenue of relief for victims of past persecution[.]") (internal quotations and brackets omitted); *see also Gomez-Romero v. Holder*, 475 F. App'x 621, 626–27 (6th Cir. 2012) (holding that "relief under both [humanitarian asylum] subsections is contingent upon a showing of past persecution") (internal quotations and citations omitted).  In other words, if K.H. did not suffer past persecution, her claim for humanitarian asylum must fail.  *See id.*  Consequently, the BIA did not abuse its discretion in denying K.H.'s application for humanitarian asylum.

### III.  CONCLUSION

For these reasons, we find that substantial evidence supports the BIA's determination that K.H. failed to show the Guatemalan government was unable or unwilling to control her persecutors and protect her.  We therefore deny K.H.'s petition for review.