NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0401n.06
No. 18-4029

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 02, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| EDWIN ROLANDO CARRILLO-CRUZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE:     SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Petitioner Edwin Rolando Carrillo-Cruz seeks review of a Board of Immigration Appeals ("Board") decision affirming the immigration judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT").

**I.**

Carrillo-Cruz was born on August 1, 1982 in the city of Sipacapa, Guatemala, where he grew up with his parents and eight siblings.  While growing up, Carrillo-Cruz witnessed government brutality and widespread violence.  After spending two years in Guatemala City looking for work, he entered the United States illegally in May 2003, for economic reasons.  The rest of his family still lives in Sipacapa.

In 2005, the Marlin Mine, the subsidiary of a Canadian mining company, opened its first open pit to mine gold in Sipacapa.  Sipacapa residents protested the mine.  Carrillo-Cruz's mother,

Santiaga Cruz Bautista, who operated a restaurant out of the family home, located near the local police station, was paid by Marlin Mine to feed the police who battled the protesters. According to Carrillo-Cruz, beginning in 2014, the anti-mine protesters threatened to burn Santiaga and her house because she refused to support the protesters. The protesters also told his mother that they would lynch Carrillo-Cruz, who financially supported the family, if he returned to Sipacapa. Santiaga filed an incident report with the local police. In January 2015, Santiaga closed the restaurant due to the threats.

Three of Carrillo-Cruz's siblings have also been threatened by the anti-mine protesters. His brother Tiburcio, a teacher, was threatened and detained in 2014 and 2016 by the protesters, because they wanted an educated local to join their cause. Both times local police rescued Tiburcio unharmed. Carrillo-Cruz's brother Osmund also worked at the Marlin Mine as a driver, driving employees to and from the mine pits. On July 21, 2017, he was detained for three hours by anti-mine protesters and rescued by the police. Carrillo-Cruz's sister Vilma worked at the mine as a secretary between 2010 and May 2017. She quit when she became pregnant because she feared that protesters, who sometimes pushed mine employees around, might harm her unborn child. The mine closed completely in 2017.

On November 21, 2013, the Department of Homeland Security ("DHS") initiated removal proceedings, charging Carrillo-Cruz with removability under 8 U.S.C. § 1182(a)(6)(A)(i), of the Immigration and Nationality Act (INA) as an alien who entered the United States without being admitted or paroled.[1] Carrillo-Cruz admitted the allegations and conceded removability at a hearing. Thereafter Carrillo-Cruz sought asylum, withholding of removal, and CAT protection, claiming that he will be persecuted by "anti-miner protesters" upon his return to Guatemala on

---

[1] While in the United States, Carrillo-Cruz acquired several driving infractions, including, *inter alia*, seven convictions for driving without a valid driver's license, and four speeding convictions.

account of his membership in two social groups consisting of "immediate family members of [his mother] Santiaga [Cruz Bautista]" and "immediate family members of those who support Guatemalan police." At his removal hearing Carrillo-Cruz testified that he fears removal to Guatemala because anti-mine protesters threatened him through his family members and sought to harm or threatened his mother and three of his siblings. He claimed that the Guatemalan government is unable or unwilling to protect him because the protests are random and the police are outnumbered. Carrillo-Cruz claimed that if returned to Guatemala, he would return to Sipacapa, because he has "nowhere else to go."

The IJ denied Carrillo-Cruz's applications for asylum, withholding of removal, and CAT protection. The IJ held that Carrillo-Cruz had not demonstrated a well-founded fear of persecution by the Guatemalan government or individuals the government was unwilling or unable to control. Critical to the IJ were the following facts: (1) that the police assisted his brothers when they had been detained; and (2) that the mining operations had ceased in Sipacapa, making further retribution by the protesters implausible. The IJ also found that Carrillo-Cruz had failed to establish a well-founded fear of persecution on account of membership in his family because he is "apolitical" and "has not been in Guatemala since 2003."

Because Carrillo-Cruz could not establish asylum eligibility, he also could not meet the higher threshold for withholding of removal.

The IJ held that Carrillo-Cruz was not entitled to CAT protection because the evidence did not show that anti-mine protesters acted with the complicity of public officials, and country conditions did not demonstrate that the Guatemalan government allows its officials to engage in torture or let it "occur unchecked" by private individuals.

Upon de novo review, the Board affirmed the IJ's decision and dismissed Carrillo-Cruz's appeal. It upheld the IJ's finding that Carrillo-Cruz had not established a well-founded fear of future persecution because the Guatemalan police protected Carrillo-Cruz's family upon request, rejecting his argument that such protection must be prompt and perfect. The Board further held that even if the Guatemalan government would be unable or unwilling to control protesters, Carrillo-Cruz failed to present objective evidence to show "that he would be singled out individually for persecution upon removal to Guatemala." In support, the Board relied on the IJ's findings that (1) the Marlin Mine is no longer operating in Sipacapa, (2) Carrillo-Cruz's family no longer runs the restaurant, and (3) Carrillo-Cruz's family members are still living without harm in Sipacapa. Carrillo-Cruz's country conditions evidence was unpersuasive because the INA does not offer protection from general conditions of violence. The Board also affirmed as not clearly erroneous the IJ's finding that the protesters' acts were private acts of retribution, which is not a statutorily protected ground. Finally, the asylum finding was fatal to Carrillo-Cruz's eligibility for withholding of removal claim. The Board did not review Carrillo-Cruz's CAT claim because he did not meaningfully challenge it in his brief.

**II.**

We review the Board's decision as the final agency determination because it issued a separate opinion upon review of the IJ's decision. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review questions of law de novo, and questions of fact under the substantial evidence rule. *Id.*; 8 U.S.C. § 1252(b)(4)(B). Factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Under this deferential standard, we will uphold a factual determination by the Board if "it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Marku*

*v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (internal quotation marks and citations omitted). In other words, we can reverse a factual determination by the Board only if we conclude that the evidence *compels* a contrary conclusion. *Id.*

## A.

Carrillo-Cruz asserts that the IJ failed to make a clear credibility determination in spite of his "well-corroborated and consistent testimony" and asks this court to remand to the Board "on this issue alone." However, the IJ's oral decision reflects that the IJ accepted Carrillo-Cruz's version of the facts, and the Board assumed his credibility for purposes of appeal.

## B.

Thus, we turn to the central question of whether the Board's decision to deny Carrillo-Cruz asylum is supported by substantial evidence. The agency concluded that Carrillo-Cruz had failed to show that the Guatemalan government would be unable or unwilling to protect him from the anti-mine protesters and that he did not belong to a particular social group for purposes of the INA.

To receive asylum, an applicant must qualify as a "refugee." *See* 8 U.S.C. §§ 1158(b)(1)(A), (b)(1)(B)(i). A refugee is one who "is unable or unwilling to return" to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). "Persecution is the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019) (internal quotation marks and citations omitted).

To qualify for withholding of removal, the applicant must demonstrate that it is more likely than not that his life or freedom would be threatened if returned because of his membership in a

particular social group or his political opinion. 8 U.S.C. § 1231(b)(3). Both asylum and withholding of removal require a showing that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them. *Khalili*, 557 F.3d at 436; *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

Carrillo-Cruz claims that he has a well-founded fear of future persecution by the anti-mine protesters if he returns to Guatemala on account of his membership in the family of his mother. We begin with the "well-founded fear" component. To prove that his fear is well-founded, Carrillo-Cruz must establish that the fear is both "subjectively genuine" and "objectively reasonable." *Mikhailevitch v. I.N.S.* 146 F.3d 384, 389 (6th Cir. 1998). We have no reason to doubt that Carrillo-Cruz actually fears return to Guatemala. However, assertions of fear must also be supported by objective evidence demonstrating a real threat of individual persecution. *See Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007). Two general categories of information are relevant in this inquiry: "(1) the government's [specific] response to an asylum applicant's persecution, and (2) general evidence of country conditions." *K.H.*, 920 F.3d at 476. Carrillo-Cruz has not made that showing. As the Board explicitly observed, the National Civil Police in Sipacapa responded to each incident of aggression by the protesters, including Tiburcio's detention on March 15, 2016, Osmund's detention on July 21, 2017, as well as Santiaga's receipt of threats on April 24, 2015. Further, the Board upheld the IJ's findings, including the fact that the mining operation has ceased, making it "implausible that the protesters would be seeking continued retribution against anyone in [Carrillo-Cruz's] family . . . at this point." This conclusion is supported by the further finding that Carrillo-Cruz's family continues to live in Sipacapa unharmed.

Thus, substantial evidence supports the Board's conclusion that Carrillo-Cruz failed to show the government's unwillingness or inability to control the anti-mine protesters.[2]

Carrillo-Cruz contends that the Board erred in not considering the general country conditions, namely the "vigilante violence and popular justice." Carrillo-Cruz is correct to the extent that failure to weigh general country conditions against the government's response is a reversible error, even if the government's response to the applicant's persecution was adequate. *K.H.*, 920 F.3d at 478. However, in this case, the Board applied the correct legal test regarding widespread violence, *see, e.g., Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015), and properly considered both country conditions and the government's response to the Carrillo-Cruz's pleas for protection in reaching its decision.[3]

Because Carrillo-Cruz cannot show a well-founded fear of future persecution, it is unnecessary for us to consider whether he is a member of a particular social group for purposes of the INA.

The Board's finding is also dispositive of his withholding of removal claim. *See Marikasi v. Lynch*, 840 F.3d 281, 292 (6th Cir. 2016).

## C.

Last, Carrillo-Cruz claims that substantial record evidence demonstrates that the agency erred in denying his application for CAT relief. However, because Carrillo-Cruz failed to

---

[2] Carrillo-Cruz complains that the IJ failed to analyze whether the government was "unable" to control the non-government actors. But, as discussed below, the Board, the final decisionmaker in this case, did.

[3] *K.H.*, which rejected the "complete helplessness" approach, was issued after the Board's decision. *See K.H.*, 920 F.3d at 476. But, as noted, the Board's decision follows the *K.H.* analysis.

meaningfully challenge the IJ's denial of CAT protection to the Board, the Board declined to review it, thus depriving this court of jurisdiction to review that question. 8 U.S.C. § 1252(d)(1).

### III.

For the foregoing reasons, we **DISMISS** Carrillo-Cruz's unexhausted and waived portions of the petition for lack of jurisdiction and **DENY** his remaining claims.