NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0174n.06

No. 13-3327

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 04, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MIKAYEL EDUARD PETROSYAN, | ) | |
| | ) | |
| Petitioner, | ) | PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| | ) | |
| ERIC HOLDER, JR., | ) | |
| | ) | |
| Respondent. | ) | |

Before: SILER, McKEAGUE, and WHITE, Circuit Judges.

**SILER**, Circuit Judge. Mikayel Eduard Petrosyan seeks review of an order issued by an Immigration Judge ("IJ"), and affirmed by the Board of Immigration Appeals ("BIA"), denying his application for asylum and withholding of removal and his request for relief under the Convention Against Torture ("CAT"). He also seeks review of the BIA's denial of his motion to remand for an opportunity to present additional evidence. For the following reasons, we **DENY** review.

BACKGROUND

Petrosyan, a native and citizen of Armenia, entered the United States on or about November 27, 2004 with a B1-B2 Visa and remained beyond the time permitted. On October 26, 2005, he filed an affirmative application for asylum. Upon being placed in removal proceedings, he renewed his applications for asylum, withholding of removal, and CAT protection. He testified at his merits hearing that he left Armenia because he was being "persecuted for [his] political views." He owned a private business in Armenia that manufactured doors and windows.

Beginning in May 2004, government officials came to his business with the intention of extorting money from him, but he refused to pay. Petrosyan was last visited in early June 2004 by Captain Manukyan, who demanded a sum of $700 a month or "there would be problems." On June 18, three men in police uniforms appeared at Petrosyan's home, held him at gunpoint, and inquired as to where Petrosyan was hiding the weapons that he planned to use to kill Manukyan. The police arrested Petrosyan and locked him in a confined room at the police station overnight. The next morning he was questioned by the head of the police department about the alleged weapons and his threat to kill Manukyan. Then, the head of the police department and two other officers proceeded to beat Petrosyan. At one point, he was struck on the side of his neck and lost consciousness. Petrosyan claimed that when he awoke, he was in the hospital and that he required surgery on his throat. In his affidavit, Petrosyan states that he had an operation to repair his vocal cords. Contrary to these assertions, the medical record states that Petrosyan had been treated at home and transported to the hospital due to complications. The medical record also states that Petrosyan's throat surgery was due to a growth and makes no mention of a surgery on his vocal cords. However, the medical report simultaneously indicated a beating as causing blockage of the throat, which impacted Petrosyan's breathing.

In a separate incident in September 2004, Petrosyan testified that his car was hit from behind while he was driving home. He happened to be situated next to a construction site where there was a "very deep and wide hole." Then Petrosyan's car was rammed again, forcing him near the edge of the hole, but he "miraculously managed to [escape]." Petrosyan claimed that he received a phone call upon returning to his apartment and was told "this time you got lucky. This time, you slipped

away." After this incident, Petrosyan decided to come to the United States. Petrosyan further stated in his affidavit that his friends told him his business was burned down.

Petrosyan's daughter and his now ex-wife remain in Armenia. Petrosyan testified that they have not been harmed, but that "there are still telephone calls in which people inquire about [his] whereabouts." He did not provide letters or statements from any family members in support of his claim. However, he submitted a letter from his friend, Gracha Shaldjyan. Shaldjyan claimed to have "personally witnessed" government officials pressuring Petrosyan to pay bribes that Petrosyan did not pay. Curiously, Shaldjyan stated that he left Armenia in 2000, four years before the events about which Petrosyan testified. Shaldjyan also stated that he and Petrosyan participated in numerous lawful demonstrations against the government. Yet, Petrosyan never alluded to any such demonstrations, and when asked his political opinion, merely stated that "[m]y political opinion contradicts the current political direction of the government, which does not allow the people to work and create."

Petrosyan also presented a witness, Leonid Dobkin, in support of his applications for relief and protection. Dobkin testified that he met Petrosyan in March 2008, after Petrosyan was in the United States. According to Dobkin, he and Petrosyan were roommates, and Petrosyan used Dobkin's computer to Skype with his ex-wife, daughter, and mother in Armenia. During one such conversation, Dobkin heard Petrosyan's mother crying because a police officer approached Petrosyan's daughter to inquire about his whereabouts.

In denying Petrosyan's applications for relief, the IJ found that, while a "generally credible witness," Petrosyan did not meet his burden of proof because he failed to submit corroborating evidence as required under the REAL ID Act. In particular, Petrosyan did not provide adequate

-3-

available corroboration of his claims from personal contacts in Armenia and failed to provide any explanation for the absence of such evidence. Furthermore, the IJ noted inconsistencies in the testimony and identified problems with the reliability of some of the limited evidence that Petrosyan provided in support of his claims. On appeal, the BIA affirmed the IJ's decision and denied Petrosyan's motion to remand for an opportunity to present additional evidence. Petrosyan requested the remand based on three new documents he submitted: a letter from his daughter, a statement from a former employee, and a statement from the person who purchased his car in October 2004. However, the BIA denied the motion after concluding that the evidence proffered was not new or previously not available.

## STANDARD OF REVIEW

Where the BIA adopts the IJ's decision and supplements that decision with its own comments, as in this case, we review both the opinion of the BIA and the IJ. *See Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (per curiam). To the extent that the BIA adopts the findings of the IJ as its own, this court treats the decision of the IJ as that of the BIA. *See Matovski v. Gonzales*, 492 F.3d 722, 740 (6th Cir. 2007).

An IJ's determination regarding the availability of corroborating evidence is not to be reversed unless "the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." INA § 242(b)(4), 8 U.S.C. § 1252(b)(4); *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009) (applying the same standard to a BIA opinion).

We may not reverse the BIA's factual findings "simply because we would have decided the matter differently." *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008). To prevail on review, the alien must demonstrate that the evidence "not only supports" the conclusion he seeks, but

-4-

"compels it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n. 1 (1992). We review the BIA's denial of a motion to remand under the abuse-of-discretion standard. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006).

## DISCUSSION

As an initial matter, the government contends that Petrosyan's claims as to asylum, withholding of removal, and protection under CAT are not properly before us. Our jurisdiction is limited by the requirement that a petitioner exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1). In order to exhaust administrative remedies, a petitioner must have raised the specific claim by arguing it in his appeal to the BIA; stated differently, claims must be "properly presented to the BIA and considered on their merits." *Hasan v. Ashcroft*, 397 F.3d 417, 419 (citations omitted).

It is true that Petrosyan has not administratively exhausted the issue of protection under the CAT before the BIA, thus depriving this court of jurisdiction to review the issue. *See Lin*, 565 F3d. at 979. However, in the context of his denial of asylum, he preserved the issue of persecution on the basis of an alleged protected ground. ("There is substantial and probative evidence in the record showing that the potential persecution feared by [Petitioner] is . . . based on his expression of his political opinion"); ("[Petitioner] has been purposefully targeted by the public authorities of Armenia and prohibited from obtaining contracts and employment . . . as punishment for his [political opinion]"). Therefore, the issue of whether the IJ erred in denying the application for asylum is properly before us. But, Petrosyan's challenge to being denied withholding of removal is not. Despite citing a risk of persecution based on an alleged protected ground, which itself is a common requirement to eligibility for both asylum and withholding of removal, Petrosyan did not

-5-

present the issue in his appeal to the BIA. Nowhere in his brief to the BIA does the phrase "withholding of removal" even appear.

Petrosyan, on the other hand, having proceeded without counsel at his merits hearing, alleges a violation of his due process rights based on the IJ's failure to give advance notice that he needed to submit more corroboration. Because he did not address this argument in his appeal to the BIA, it is procedurally defaulted.

However, even if Petrosyan had administratively exhausted his due process claim, it would still be without merit. Due process entitles aliens to a full and fair hearing, though the IJ retains "broad discretion in conducting that hearing." *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003). A due process violation occurs only when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (citation omitted). To prevail on a due process challenge, an alien must demonstrate not only error, but also "substantial prejudice," which is a showing that the alleged violation affected the outcome of the proceeding. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005).

Although unrepresented during his hearing, Petrosyan had an attorney during the master calendar hearing in 2008 and continued to be represented by this counsel until 2010, when Petrosyan requested counsel's withdrawal. In the motion to withdraw, counsel stated that Petrosyan had been notified "of pending deadlines, existing obligations, and the consequences of failing to comply with the deadlines or appear at scheduled hearings." Moreover, Petrosyan twice admitted being told that he should provide documentary evidence, including a statement indicating he had been advised of this need to furnish documentation "when [he] decided to seek . . . political asylum." During

questioning by the IJ pertaining to proof of the damage sustained by his car, Petrosyan conceded that he did not take photographs and "was even thinking that here I would be applying and I would need them here."  In sum, he completely fails to show a violation of his due process rights.

## A.  Asylum

Nothing in the record compels us to reverse the findings of the BIA that Petrosyan does not qualify for asylum because he failed to produce reasonably obtainable evidence to corroborate his claims of persecution.  To qualify for asylum under the Immigration and Nationality Act ("INA"), the burden falls on the applicant to show that he meets the definition of a "refugee."  8 U.S.C. § 1158(b).  The INA defines "refugee" as "a person who is unable or unwilling to return to h[is] home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). Petrosyan claims that he is eligible for asylum on the basis of his political opinion, which "was against the policies of the government" and "did not allow people to work and create."

Because the application for asylum was filed after May 2005, it is also governed by the REAL ID Act.  *See Bonilla-Morales*, 607 F.3d at 1136.  Under the Real ID Act's amendments to the INA, when the IJ "determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence."  INA § 240(c)(4)(B), 8 U.S.C. § 1229a(c)(4)(B).  Even if an applicant is otherwise credible, the failure to provide reasonably available corroborating evidence can lead to a finding that he has failed to

meet his burden of proof. *Shkabari v. Gonzales*, 427 F.3d 324, 331 (6th Cir. 2005) (quoting *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004)).

Petrosyan fails to show that corroborating evidence in support of his demonstrating past persecution was not reasonably obtainable. He points to a number of ways in which he was a victim of past persecution. He was threatened, detained for a day, and brutally beaten. Due to his beating, he was hospitalized. After being released, he was afraid to go to his business, and he stayed in bed at home. He later learned that his business was burned down. Lastly, an attempt was made at his life when another car attempted to push his car into a deep construction hole. The medical report that Petrosyan furnished indicates some evidence of his having been beaten, but by itself is insufficient to compel us to reverse the findings of fact made by the IJ and the BIA. Petrosyan alleges three separate instances of persecution: (1) beaten by the police, (2) rear-ended while in his car at the construction site, and (3) burning down of his business. He must do more than merely support the notion of persecution with one isolated piece of evidence that only is suggestive of his being beaten at some point prior to hospitalization. The very medical report that Petrosyan submits does not in any way identify the person responsible for the beating or the facts surrounding the beating. Even accepting the medical report standing alone as corroborating Petrosyan's beating, he fails to produce reasonably obtainable evidence to substantiate his two other claims of persecution.

Both the IJ and the BIA identified various documents that Petrosyan could have been reasonably expected to provide, such as affidavits from family members, friends, and employees of his company that could substantiate his claims about his experiences in Armenia. For example, an affidavit from his daughter could have provided substantial corroboration of the facts surrounding his arrest, as he claims she was present at the time the police stormed his house. His ex-wife was

another obvious source of corroboration. She was present at the police station while he was being detained; was at the hospital after his release; accompanied him to file a report with the prosecutor; and was at home after he was rear-ended. The friends who happened to pass by Petrosyan's business and discovered it was burned down are yet another example. Furthermore, Petrosyan testified that he remains in contact with his family and friends in Armenia, making it reasonable for the IJ to have expected him to procure statements from them. Thus, considering all these accessible avenues for supplying evidence, Petrosyan failed to corroborate his accounts of persecution and does not qualify for asylum.

Moreover, the supposed "political opinion" as the basis of his persecution is not a protected ground. Petrosyan states that his political opinion favors allowing people "to work and create." This characterization only alludes to an ability to engage in entrepreneurial pursuits. In reality, the events for which Petrosyan claims persecution stem from his status as a business owner and out of his refusal to pay a bribe. In order to prove persecution on account of a political belief, Petrosyan must show, through direct or circumstantial evidence, that he was persecuted *on account of* or *because of* his political opinion. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). He must show that he acted based on a political opinion and that his actions were interpreted as such by his alleged persecutors. *Bu v. Gonzales*, 490 F.3d 424, 430 (6th Cir. 2007) (internal quotation marks and citation omitted). Here, the record fails to sufficiently connect Petrosyan's alleged persecution to his political opinion. He failed to connect the beatings at the police station, the ramming of his vehicle at the construction site, or the burning down of his business "to anything more than the financial demands of criminal corruption." *Khozhaynova v. Holder*, 641 F. 3d 187, 196 (6th Cir. 2011). Petrosyan provides no evidence that he is politically active in any other way than by running

a business, nor does he establish that his persecutors interpreted his refusal to pay extortion demands as an articulation of his political opinion. *Id.* Thus, Petrosyan failed to demonstrate that he was persecuted on account of a statutorily protected ground.

## B. Withholding of Removal under the INA

Even assuming we can review Petrosyan's claim for withholding of removal, it similarly fails. "[A]n applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (internal quotation marks omitted). To qualify for withholding of removal, an applicant must demonstrate it is more likely than not that, if removed to a designated country, his "life or freedom would be threatened" on account of a protected ground. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). Thus, an applicant who fails to establish his eligibility for asylum necessarily fails to establish his eligibility for withholding of removal. *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006) (citing *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). Here, Petrosyan has not established he is eligible for asylum; he likewise cannot show eligibility for withholding of removal.

## C. Protection under the CAT

Even if Petrosyan's claim for protection under the CAT is properly before us, it too fails. He does not demonstrate a clear probability of torture in Armenia. To warrant protection under the CAT, the applicant bears the burden of proving it is more likely than not that he will be tortured if sent to the country of removal. 8 C.F.R. § 1208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2). To qualify as torture, the "severe pain or suffering" must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official

or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006).

The IJ's determination, as affirmed by the BIA, that Petrosyan did not warrant protection under the CAT was supported by substantial evidence and nothing in the record compels us to reverse. The only relevant evidence Petrosyan provides are documents to corroborate the fact that Captain Manukyan now has attained a high position within the police. But Petrosyan offers no evidence to suggest that Manukyan will harm, let alone torture, him. Thus, Petrosyan is not eligible for protection under the CAT.

**Motion to Remand**

To succeed on a motion to remand, the movant must submit new or previously unavailable evidence, and the motion must be accompanied by the appropriate application for relief. 8 C.F.R. § 1003.2(c)(1). The BIA denied the motion after concluding that Petrosyan did not demonstrate that the evidence proffered was previously not available. Petrosyan does not show that the statements he sought to use as a basis for remand were in any way not available. Therefore, the BIA did not abuse its discretion in denying the motion.

**REVIEW DENIED**.

-11-