RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0271p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────

ANA MERCEDES ZOMETA-ORELLANA,

        *Petitioner*,

    *v.*

MERRICK B. GARLAND, Attorney General,

        *Respondent*.

No. 21-3001

─────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 208 756 552.

Decided and Filed:  November 2, 2021[*]

Before:  GUY, COLE, and STRANCH, Circuit Judges.

─────────────

**COUNSEL**

─────────────

**ON BRIEF:**  Alicia Jeanine Triche, TRICHE IMMIGRATION APPEALS, Memphis, Tennessee, for Petitioner.  Brooke M. Maurer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

**OPINION**

─────────────

JANE B. STRANCH, Circuit Judge.  Ana Mercedes Zometa-Orellana, a native and citizen of El Salvador, suffered regular beatings and rape by her domestic partner.  She sought asylum and withholding of removal based both on political opinion and membership in a

───────────────

[*]This decision was originally filed as an unpublished opinion on November 2, 2021.  The court has now designated the opinion for publication.

particular social group. An immigration judge (IJ) denied asylum and withholding of removal, and the Board of Immigration Appeals (BIA) affirmed that ruling. Since then, however, a crucial case on which both the BIA and the IJ relied to assess Zometa-Orellana's particular social group was vacated by the Attorney General. And the IJ and BIA failed to consider the entire record in determining the El Salvadorian Government's willingness to respond and Zometa-Orellana's ability to relocate in El Salvador. For these reasons, we **GRANT** the petition, **VACATE** the BIA's decision, and **REMAND** for further proceedings in accordance with this opinion.

## I.  BACKGROUND

### A.  Factual Background

Zometa-Orellana is a native and citizen of El Salvador who entered the United States on February 25, 2016. She grew up in Zacatcoluca, where she attended school until she was eighteen years old. She met her domestic partner, Oscar Pineda, in 2011, and moved in with him in May 2014. Beginning in October 2015, Zometa-Orellana questioned Pineda regarding evidence she uncovered of his infidelity. As a result, Pineda grabbed her by the hair and dragged her to the ground, where he proceeded to punch and kick her for about thirty minutes. After this incident, Pineda beat Zometa-Orellana whenever he felt irritated.

Two months later, in December 2015, Zometa-Orellana failed to prepare dinner before Pineda's arrival home from work. Pineda became infuriated, calling her derogatory names, such as "whore," grabbing her by the hair, and throwing her to the ground. Pineda forcibly removed her clothes and raped her. Pineda raped her an additional four times between December 2015 and February 8, 2016.

In addition to his physical abuse, Pineda seized Zometa-Orellana's phone and locked her inside their home to prevent her from seeking help. She escaped on February 8, 2016, and went to her parents' home. Upon learning what had happened to her, Zometa-Orellana's parents suggested that she leave the country. Zometa-Orellana fled to the United States because she felt she could not relocate in El Salvador due to its small geographic size, and because she could not rely on the El Salvadorian police. When Pineda learned of her escape, he traveled to her parents' home and warned them that if he ever saw her again, he would kill her.

Zometa-Orellana entered the United States without inspection around Hidalgo, Texas. She was apprehended by the Department of Homeland Security, Immigration and Customs Enforcement, on March 31, 2016. And that same day, DHS/ICE released her on a $12,000 bond.

**B. Procedural Background**

The Government initiated removal in a Notice to Appear (NTA) dated March 24, 2016. As relief from removal, Zometa-Orellana sought asylum and withholding of removal under 8 U.S.C.A. §§ 1158(a)-(b) and 1231(b)(3) based both on her anti-machismo political opinion and her membership in a particular social group. On January 9, 2017, Zometa-Orellana appeared before the IJ and filed her applications for relief. A hearing was held on October 4, 2018 before the IJ.

The IJ found that Zometa-Orellana failed to satisfy her burden of proof as to her political opinion claim. At the outset, the IJ questioned Zometa-Orellana's credibility, but ultimately assumed that her allegations were credible. The IJ stated that he saw "no evidence respondent ever outwardly expressed any type of anti-machismo political opinion to anyone, other than Oscar." The IJ concluded that "Oscar [did not] target[] her on account of any type of imputed or actual political opinion."

The IJ also concluded that Zometa-Orellana's proposed particular social group—El Salvadorian women of childbearing age in domestic partnerships—failed. The IJ analyzed her proposed social group under *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014), and *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014). The IJ reasoned that "age" is a "mutable" characteristic and that the group is overbroad. As to the nexus between the proposed social group and her persecution, the IJ also concluded that there was "no evidence that she was ever targeted because she is a woman of childbearing age." Rather, "[s]he was targeted because she was the domestic partner of Oscar, not because of her membership in her articulated group." Thus, the IJ ruled that the nexus requirement had not been satisfied. Finally, the IJ noted that Zometa-Orellana had not demonstrated that the Government of El Salvador condoned this behavior or would be unable to protect her or that she was unable to relocate within El Salvador. The IJ dismissed the application.

On November 1, 2018, Zometa-Orellana appealed the IJ's decision to the BIA.  The BIA adopted the IJ's reasoning as follows.  It agreed with the IJ's conclusion that Zometa-Orellana's proposed social group is not cognizable because the group is not "defined with sufficient particularity or has the requisite social distinction to qualify as a particular social group for the purposes of refugee relief."  To support its conclusion, the BIA cited *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), explaining that "generally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum and related relief."

The BIA also adopted the IJ's conclusion that Zometa-Orellana had not established the required nexus between the harm she feared and her defined social group, noting that the IJ "found the respondent has not provided evidence indicating that she would be personally targeted due to her particular social group."  In support of that conclusion, the BIA relied on the IJ's finding that "respondent was targeted because she was the domestic partner of her abuser, and not because of her particular social group."

As to Zometa-Orellana's burden to demonstrate that the authorities were unable or unwilling to protect her, the BIA noted that the "respondent did not report the incidents with her abuser to the police and properly determined that the respondent did not present sufficient evidence that the police would not have acted to protect her from the individual she fears."  The BIA found no error in the IJ's conclusion that she had not demonstrated that the authorities in El Salvador would be unwilling to help her.

Finally, the BIA adopted the IJ's conclusion that Zometa-Orellana did not demonstrate or establish that she was or will be targeted on account of her political opinion and that internal relocation is unfeasible.  The BIA then concluded that the IJ had correctly denied Zometa-Orellana's petitions for asylum and withholding of removal.

Zometa-Orellana now appeals.

## II. DISCUSSION

Zometa-Orellana contends that the BIA's adjudication of the asylum application is "legally insufficient" on all counts. In the alternative, she contends that the BIA's decision is not supported by sufficient evidence. We address these contentions in turn.

### A. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)). We review the IJ's and the BIA's legal findings de novo, *Giraldo v. Holder*, 654 F.3d 609, 611 (6th Cir. 2011), and their factual findings under the substantial-evidence standard, *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012). Under the substantial-evidence standard, the IJ's and BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (quoting *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009)).

### B. General Principles of Asylum and Withholding of Removal

To be eligible for asylum, a petitioner must demonstrate that she is "unable or unwilling" to return to her country of origin "because of her persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(B)(i). Petitioner, therefore, bears the burden to establish that: (1) her treatment constitutes past persecution or that she has a well-founded fear of future persecution; (2) there was a connection between the persecution and the protected ground; and (3) the persecution was committed by the government, or by non-government actors whom the government was unable or unwilling to control. *See Pilica v. Ashcroft*, 388 F.3d 941, 950–51 (6th Cir. 2004). Critically, if the "applicant establishes [s]he suffered past persecution," she becomes entitled to a presumption of a well-founded fear of future persecution. *Vincent v. Holder*, 632 F.3d 351, 354–55 (6th Cir. 2011).

To qualify for withholding of removal, a petitioner must similarly establish that if removed to her country of origin, her "life or freedom would be threatened" based on her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant seeking withholding of removal faces "a more stringent burden than what is required on a claim for asylum," *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005) (quoting *Pilica*, 388 F.3d at 951), and must also demonstrate "that there is a clear probability that she will be subject to persecution if forced to return to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Pilica*, 388 F.3d at 951).

## C. Legal Sufficiency of BIA Opinion

Zometa-Orellana first contends that the BIA's opinion is legally insufficient because it failed to offer any analysis in support of its conclusions when adopting the IJ's decision. Although the BIA must provide some rational explanation for its contentions, the BIA is not required to "list every possible positive and negative factor in its decision." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (quoting *Rodriguez-Rivera v. INS*, 993 F.2d 169, 170–71 (8th Cir. 1993)). Rather, the BIA need only "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142–43 (5th Cir. 1984)).

Generally, cases in which we have found that remand was necessary were decided on the grounds that the BIA cursorily denied a motion or petition with little to no discussion at all. For example, in the context of the BIA's denial of a motion to remand, we found that the BIA's five-sentence, single paragraph rationale was wholly inadequate. *See Preçetaj v. Sessions*, 907 F.3d 453, 459 (6th Cir. 2018). Likewise, in *Marqus v. Barr*, 968 F.3d 583, 593 (6th Cir. 2020), we found that the BIA's denial of a motion to remand was inadequate when it included no more than a bald statement that the new evidence was insufficient, and it neglected to consider any of the new evidence that was neither immaterial nor previously available.

Though more explanation would have been preferable, the BIA here considered each of the arguments and explained why it agreed with the IJ. Moreover, the BIA identified the IJ's findings on which it was relying in concluding that it ultimately agreed with the IJ's conclusions.

For example, regarding the nexus element, the BIA explained that Zometa-Orellana did not meet her burden because the IJ concluded that she provided no evidence that she was targeted due to her social group and relied on the IJ's finding that she was targeted for a different reason. Whether the BIA's ultimate conclusions are supported by the record is a separate inquiry, but for the reasons stated above, the reasoning provided by the BIA is not so inadequate as to prevent meaningful review on appeal.

### D. Substantial Evidence

Zometa-Orellana contends that the BIA's decisions as to her particular social group and political opinion, the willingness of the government to protect her, and whether internal relocation was required or reasonably feasible were all not supported by sufficient evidence.

#### 1. Political Opinion

The BIA concluded that Zometa-Orellana did not establish that she was targeted on the basis of her political opinion. Zometa-Orellana contends that the BIA's decision was not supported by substantial evidence because her testimony suggested she believed that she was being harmed by Pineda as a result of the machismo that exists in El Salvador. She also points to other evidence in the record, which she contends "establishes" the primacy of "machismo" culture in El Salvador, including a report from the U.S. Department of State finding that in El Salvador, domestic violence against woman is a human rights problem and a report by the Immigration and Refugee Board of Canada confirming the same.

To prove persecution as a result of a political belief, Zometa-Orellana must demonstrate that she was persecuted "on *account of* or *because of* [her] political belief," *Petrosyan v. Holder*, 558 F. App'x 519, 525 (6th Cir. 2014) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)). To do so, she must prove that she (1) acted based on a political opinion and (2) that her actions were interpreted as such by her alleged persecutors. *Id.*

The record fails to connect her alleged persecution to her political opinion. As the IJ found, Zometa-Orellana "only spoke out against machismo to Oscar, and never expressed any type of political opinion to anyone else in that country." Zometa-Orellana testified that her

brother and father perpetuated machismo in El Salvador, but she made no mention of her brother or father harming her or her mother. And likewise, Zometa-Orellana conceded that Pineda exhibited a different machismo than "[t]he machismo that exists in El Salvador." Zometa-Orellana provides no evidence that Pineda even interpreted her actions or inactions as articulations of her political opinion. Accordingly, the record does not compel a conclusion contrary to the BIA's conclusion that the record lacked the requisite nexus between any past or future harm that she feared and her stated "anti-machismo" political opinion.

Zometa-Orellana's reliance on *Rodriguez Tornes v. Garland*, 993 F.3d 743 (9th Cir. 2021), is likewise misplaced. While the Ninth Circuit there noted that feminism is a widely accepted political opinion, it was clear from the record that the petitioner's mistreatment was "because she sought an equal perch in the social hierarchy." *Id.* at 753 (footnote omitted). For example, after the petitioner took a job against her domestic partner's wishes, she was attacked. *Id.* In addition, after she escaped the relationship with her domestic partner and married another man, the petitioner testified that she still asserted her rights as a woman against her husband, stating that she was not obligated to have intercourse with him or that she was allowed to purchase her own property. *Id.* At every turn, in response, her husband retaliated. *Id.* Critically, as the Ninth Circuit summarized: "she was persecuted when those men mistreated her because she expressly asserted to them her political opinion that she was their equal." *Id.*

By contrast, Zometa-Orellana has not pointed to any evidence that Pineda attacked her after she expressly asserted her political belief. Nor has she articulated in the record how her actions (or inactions) in response to Pineda were connected to her anti-machismo beliefs. Therefore, unlike in *Rodriguez Tornes*, it is not clear whether Zometa-Orellana ever asserted her rights as a woman in a way that would demonstrate a nexus between her political opinion and her persecution.

### 2. Particular Social Group

The INA does not define "particular social group," but the Board and this court have articulated its requirements. A group's shared characteristic "must be one that members of the group either cannot change, or should not be required to change because it is fundamental to

their individual identities or consciences." *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233–34 (BIA 1985))  Also, "a social group may not be circularly defined by the fact that it suffers persecution."  *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005).  And the "alleged social group must be both particular and socially visible."  *Umaña-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (quoting *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010)).

The BIA here concluded that the Zometa-Orellana's proposed social group of "El Salvadorian women of childbearing age in domestic partnerships" is not cognizable.  In so concluding, the BIA relied on *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), explaining that "claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum and related relief."  In essence, the BIA, relying on *Matter of A-B-*, disposed of the element on the grounds that particular social groups presumptively cannot be defined by domestic violence by non-government actors.

We also note that the BIA and IJ relied on their conclusion that there was no cognizable social group, as defined by domestic violence abuse, to then also determine that the nexus requirement had not been met.  Indeed, the IJ and BIA both concluded that she was targeted because "she was the domestic partner of her abuser" and not because of "her particular social group" (which they determined to be incognizable).

But on June 16, 2021, the Attorney General issued *Matter of A-B-*, 28 I. & N. Dec 307 (A.G. 2021), in which he wholly vacated the case on which the BIA relied to draw that conclusion.  In cases where a decision on which the IJ or BIA relied to make a determination was vacated or abrogated, we have determined that this change in the law "counsels remand." *Antonio v. Barr*, 959 F.3d. 778, 790 n.3 (6th Cir. 2020).  With this change in the law, the agency on remand should consider what change this vacatur has on the particular social group analysis, and specifically whether groups pertaining to domestic violence are now cognizable.  And to the extent that its analysis regarding a particular social group changes on remand, it should then reassess the nexus requirement.

In assessing the particular social group supported by the record in this case, we emphasize that the IJ and BIA "have certain obligations under international law to extend refuge to those who qualify for such relief" and "bear the responsibility for ensuring that refugee protection is provided where such protection is warranted by the circumstances of an asylum applicant's claim." *Carrera-Garrido v. AG of the United States*, 313 F. App'x 527, 530 (3d Cir. 2009) (quoting *In re S-M-J*, 21 I. & N. Dec. 722, 723 (BIA 1997)). In other words, the BIA and IJ have an independent role to assess the plausibility of the application on the record as a whole and must do so on remand. *See Cantarero-Lagos v. Barr*, 924 F.3d 145, 154 (5th Cir. 2019) (Dennis, J., concurring) ("Someone who faces persecution on account of a protected ground is no less deserving of asylum's protections because of her inability to exactly delineate a convoluted legal concept. Such a requirement runs counter to the BIA's responsibility to ensure that refugee protection is provided where the circumstances warrants it, [and] thwarts the cooperative approach emphasized by the BIA . . . .").

### 3. Government's Willingness to Control

Regarding this element of the analysis, "a government's specific response to a petitioner's persecution cannot be the only relevant evidence an immigration judge considers." *K.H. v. Barr*, 920 F.3d 470, 476 (6th Cir. 2019). Rather, an IJ should consider two general categories of information to assess whether a Government's response was adequate: (1) the Government's actual response to an asylum applicant's persecution when it was reported; and (2) evidence of the country's conditions. *See id.*

The BIA, referencing the IJ's determinations, concluded that Zometa-Orellana did not demonstrate that the authorities in El Salvador would be unable or unwilling to protect her. In so concluding, both the BIA and IJ relied exclusively on the fact that Zometa-Orellana did not report the incidents regarding her abuse to the police department. In response, and at the hearing, Zometa-Orellana explained that she feared retaliation and believed that the police would not act in any meaningful way to protect her. And she submitted additional documentary evidence, including a Country Report from the U.S. Department of State, a report from the Canadian Immigration and Refugee Board on El Salvador, and a report from the UN High Commissioner for Refugees to substantiate her claim.

The BIA's conclusion is not supported by substantial evidence because it completely disregarded and failed to address the documentary evidence of the country conditions that Zometa-Orellana submitted. *See Juan-Pedro v. Sessions*, 740 F. App'x 467, 470–71 (6th Cir. 2018). She submitted a Report from the Canadian Immigration and Refugee Board, which corroborated her fear of retaliation and noted that "in light of inadequate protection systems," many women feared reporting their domestic violence incidents to the police and "making a report puts the victim even more at risk of further violence by her abuser." Likewise, the UNHCR Report that Zometa-Orellana submitted similarly indicated the inadequacy of state protection in El Salvador, finding that one El Salvadorian woman reported "standing in front of the police, bleeding, and the police said, 'Well, he's your husband.'" Neither the BIA nor the IJ grappled with the significance of these reports in the context of Zometa-Orellana's failure to report the abuse she suffered to the El Salvadorian authorities.

On remand, the BIA is to assess the sufficiency of this evidence and whether it establishes that the El Salvadorian Government was unwilling to act.

### 4. Internal Relocation

Because the BIA and IJ concluded that Zometa-Orellana had not established a "valid particular social group" and "the lack of a government actor," they concluded that she was not entitled to a presumption of future persecution. In assessing whether Zometa-Orellana had a well-founded fear of future persecution, the BIA and the IJ concluded that future persecution was unlikely because she could relocate within El Salvador. In so concluding, the IJ rejected Zometa-Orellana's testimony that El Salvador is such a small country—a person could drive through the whole country in three hours—that she would be unsafe no matter where she located.

Contrary to the Government's assertion, because the BIA raised the issue on appeal in its decision, it has not been waived, and we do not lack jurisdiction to review the claim. *See Khalili*, 557 F.3d at 433.

The BIA and IJ's conclusion is not supported by substantial evidence. The IJ summarily dismissed Zometa-Orellana's argument on the grounds that "[t]here is no reason this man would be able to locate her, even though El Salvador is such a small country, if she simply relocates elsewhere and does not use a phone and does not tell him where she is." But neither the IJ nor

the BIA rely on any support from the factual record to reach their conclusion, rendering it not supported by substantial evidence. *See Juan-Pedro*, 740 F. App'x at 470–71. We therefore remand the case to the BIA to develop the factual record on this point.

### III. CONCLUSION

For foregoing reasons, we **GRANT** the petition, **VACATE** the BIA's decision, and **REMAND** for further proceedings in accordance with this opinion.